UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>PEDRO LOPEZ SANCHEZ,<br><br>Defendant/Petitioner. | No. 2:14-cr-00245-KJM<br><br><br><br>ORDER |

Subject to a written plea agreement based on Federal Rule of Criminal Procedure 11(c)(1)(C), petitioner Pedro Lopez-Sanchez pled guilty to conspiring to manufacture marijuana and later was sentenced to the parties' agreed sentence of 65 months in prison. He now seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 based on allegedly ineffective assistance of counsel. Pet., ECF No. 99. The government moves to dismiss the petition arguing Lopez-Sanchez waived his right to collaterally attack his guilty plea or alternatively that his counsel's alleged ineffectiveness did not cause him prejudice. Gov't Mot., ECF No. 120. As explained below, the court DENIES Lopez-Sanchez's petition and DENIES as MOOT the government's motion to dismiss.

////

////

I. BACKGROUND

The Indictment charged Lopez-Sanchez in three counts: Conspiring to manufacture at least 100 marijuana plants (Count One); assembling, manufacturing, and setting up a dangerous trap on federal property where marijuana was being manufactured (Count Two); and depredation of public lands and resources (Count Seven). Indictment, ECF No. 10, at 1-2, 7 (charging violations of 21 U.S.C. § 841(a)(1), § 841 (d)(1), § 846 and § 1361). Lopez-Sanchez faced a 40-year maximum with a five-year mandatory minimum prison sentence on Count One, with concurrent ten-year maximums on Counts Two and Seven, bringing his total maximum exposure to prison time up to fifty years, with the mandatory minimum of five years triggered by Count One. *Id.* at 7-8.

### A. Guilty Plea and Sentencing

On December 9, 2015, Lopez-Sanchez entered into a plea agreement in which he agreed to plead guilty to Count One, serve a 65-month prison sentence and waive his right to appeal or collaterally attack his sentence. Plea Agmt., ECF No. 61, ¶¶ II.A., VII.A. In exchange, the government agreed to dismiss the other two counts against him. *Id.* ¶ III.A. Lopez-Sanchez agreed his sentence, which slightly exceeds the statutory mandatory five-year minimum ordinarily imposed on unarmed marijuana manufacturers, was warranted given aggravating circumstances, *id.* ¶ VI.B, including a hidden booby trap consisting of "a six-foot deep human-dug pit next to the [marijuana] site that contained sixteen sharpened stakes pointed upward" and "four wire snares . . . one of which ensnared a law enforcement canine assisting with the search." *Id.* Ex. A (reciting factual basis).

Lopez-Sanchez's primary language is Spanish, and he communicated during court proceedings primarily through a court-certified Spanish interpreter. A certified interpreter fully translated his plea agreement and was present throughout his plea hearing. *See, e.g.*, Dec. 9, 2015 H'rg Mins, ECF No. 59; Plea Agmt. ¶ 9.C (interpreter's signature affirming interpreter "fully and accurately translated the Indictment, Information, Waiver of Indictment, this Plea Agreement and defendant's rights . . . from the English language to the Spanish language for defendant."). In his plea agreement and during his plea colloquy in open court, Lopez-Sanchez affirmed he

understood the plea agreement and voluntarily agreed to it, and confirmed he was satisfied with the legal representation and advice he received. Plea Agmt. ¶ IX.B; Plea Tr. (Appendix 4, ECF No. 120-2) at 6. The prosecutor summarized the plea agreement on the record, explaining why the parties agreed on a 65-month prison sentence; the prosecutor also explained in plain language what Lopez-Sanchez's waiver of appeal and collateral attack foreclosed. Plea Tr. at 7-9. Lopez-Sanchez confirmed in response to the court's careful questioning the prosecutor's summary was accurate. *Id.* at 9.

At the March 16, 2016 sentencing hearing, the court reviewed the parties' agreed-upon 65-month sentence and indicated its willingness to accept the agreement as binding on the court. Mar. 16, 2016 Sentencing Tr. (Appendix 6, ECF No. 120-2), at 9-11. The prosecutor stated for the record that "the parties agree that the defendant's participation in a marijuana manufacturing operation that used a dugout, hidden, pit trap equipped with sharpened stakes, in addition to wire snares, constitutes aggravating circumstances that warrant this upward departure to 65 months incarceration." *Id.* at 10. Lopez-Sanchez did not protest the sentence at any point, including when offered the opportunity to allocute as was his right. *Id*. at 11 (Q: "Mr. Lopez, anything else you would like to say to the Court at this time? A: "No."). The court sentenced Lopez-Sanchez to 65 months in prison. *Id*.

B. Lopez-Sanchez's § 2255 Petition

Lopez-Sanchez now petitions the court to vacate, set aside or reduce his sentence under § 2255 on the grounds that his attorney, Clemente Jimenez, provided "poor or insufficient legal counsel" in representing him. Pet. ¶ 14.A. Specifically, Lopez-Sanchez contends he received "very little" assistance in obtaining a more favorable plea agreement; he was "misadvised" to forfeit his right to appeal; he could only communicate with his lawyer by phone and through an interpreter; his lawyer refused to provide discovery documents in Spanish; and his lawyer did nothing to lower his sentence, including failing to raise as a potential mitigating factor the lifelong foot injury Sanchez sustained during his arrest. *Id.* ¶¶ 14.A-C; *see also* Sanchez Aff.,

3

ECF No. 107, at 1-2.[1] The government contends Sanchez waived his right to collaterally attack his guilty plea and sentence, that the record discloses no ineffectiveness assistance of counsel, and that even if it did, Sanchez has suffered no prejudice. Gov't Mot. at 2. Sanchez filed two briefs responding to the government's position. ECF Nos. 125, 133. As explained below, the court denies his petition.

II. ANALYSIS

    A. Whether Lopez-Sanchez Waived His Right to File this § 2255 Petition

In the Ninth Circuit, a defendant's knowing and voluntary waiver of his statutory rights under § 2255 is enforceable against all non-waivable rights. *States v. Abarca*, 985 F.2d 1012, 1013-14 (9th Cir. 1993). Here, Lopez-Sanchez agreed to waive his right to appeal and collateral attack. Plea Agmt. ¶ VII(B). This waiver, however, is unenforceable against Lopez-Sanchez's ineffective-assistance-of-counsel claims. Neither the Supreme Court nor the Ninth Circuit has directly declared waivers unenforceable against "all" ineffective-assistance-of-counsel claims. *See Tovar v. United States*, No. 09-CR-3277 BEN, 2013 WL 5564187, at *2 (S.D. Cal. Oct. 7, 2013) (noting the absence of an express decision). Without clear authority to the contrary, however, this court declines the government's request to enforce such waivers against "some" if not all ineffective-assistance-of-counsel claims. *See* Gov't Mot. at 8-9 (citing out-of-circuit authority); *cf. Abarca*, 985 F.2d at 1014 ("[W]e do not hold that Abarca's waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver . . . ") (citations omitted); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ("We doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain."). Lopez-Sanchez's motion is not barred by waiver.[2]

---

[1] Lopez-Sanchez filed two identical affidavits eleven days apart. *See* ECF No. 106 (filed Oct. 6, 2016); ECF No. 107 (filed Oct. 17, 2016).

[2] District courts within this circuit frequently consider similar challenges despite a defendant's voluntarily waiver of the right to bring a collateral attack under § 2255. *See, e.g.*, *United States v. Lopez-Vaal*, No. 3:16-CR-00995-GPC, 2018 WL 525819, at *5 (S.D. Cal.

4

B. Ineffective Assistance of Counsel: The *Strickland* Test

To successfully set aside or vacate his conviction and sentence based on ineffective assistance of counsel, Sanchez must satisfy *Strickland*'s two-pronged test by showing (1) objectively unreasonable performance by his counsel and (2) prejudice caused by these professional errors. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Torrey v. Estelle*, 842 F.2d 234, 237 (9th Cir. 1988) (applying *Strickland* to habeas proceeding involving collateral consequences of plea).

*Strickland*'s first prong, which asks whether counsel's representation "fell below an objective standard of reasonableness," is assessed using "prevailing professional norms" of the legal community, as reflected in "American Bar Association standards and the like . . . ." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (citing *Strickland*, 466 U.S. at 688). *Strickland*'s second prong asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As relevant here, Sanchez must demonstrate that, absent his attorney's errors, Sanchez "'would either have gone to trial or received a better plea bargain.'" *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004)). This two-factor test is demanding. *Padilla*, 559 U.S. at 370 ("Surmounting *Strickland*'s high bar is never an easy task.") (citations omitted); *cf. Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential[.]").

Here, Lopez-Sanchez cannot satisfy either *Strickland* prong. He alleges his attorney provided "poor or insufficient legal advice" in representing him; provided "very little assistance" and "very little information"; "misadvised" him to forfeit his appeal rights;

---

Jan. 24, 2018) ("Defendant's waiver of his right to collaterally attack his sentence is not effective with respect to claims of ineffective assistance of counsel."); *Mariscal v. United States*, No. 3:14-CR-02460, 2017 WL 1346641, at *1 (S.D. Cal. Apr. 11, 2017); *United States v. Witts*, No. CR S-06-0258 KJM DAD, 2011 WL 6056908, at *2 (E.D. Cal. Dec. 6, 2011*), report and recommendation adopted*, No. CR S-06-0258 KJM DAD, 2012 WL 1081169 (E.D. Cal. Mar. 30, 2012); *Nelson v. United States*, Nos. CV 09–0090 AWI & CR 07–0134 AWI, 2009 WL 361954, at *7 (E.D. Cal. Feb.12, 2009); *Meraz v. United States*, Nos. 05 CV 0370 AWI & CR F 04–5401 AWI, 2007 WL 4239510, at *1 (E.D. Cal. Dec. 3, 2007).

communicated with him only "through an interpreter by phone"; refused to translate discovery documents into Spanish for him; did nothing to lower his sentence or obtain a more favorable plea agreement; and never mentioned his dog bite injury as a mitigating factor. Pet. ¶¶ 14.A-C; Sanchez Aff. at 1-2. As explained below, these allegations and the corresponding record do not cover conduct falling below "an objective standard of reasonableness," and even if they did, Sanchez has not shown any resulting prejudice.

1. Forfeiting his Appeal Rights

Lopez-Sanchez's vague allegation that his attorney "misadvised" him to waive his appeal and collateral attack rights does not support an ineffective assistance of counsel claim. Pet. ¶ 14.A; Sanchez Aff. at 1. Sanchez neither explains why this advice was misplaced nor how it prejudiced him. *See generally* Pet.; Sanchez Aff.; Reply, ECF No. 125. The waiver of his right to appeal or collaterally attack his sentence was a clear and an integral part of the quid pro quo embodied in his plea agreement: In exchange for a reduction of his prison sentence and dismissal of Counts Two and Seven, Lopez-Sanchez expressly waived any right to appeal or bring a collateral attack, challenging "any aspect of the guilty plea, conviction or sentence, except for non-waivable claims[.]" Plea Agmt. ¶ VII.B.

Despite Lopez-Sanchez's view that "most American citizens would never sign a plea with such a clause," Reply at 1, waivers are frequently included in plea deals and are supported by public policy considerations. *See United States v. Littlefield*, 105 F.3d 527, 530 (9th Cir. 1997) ("We have repeatedly noted that public policy strongly supports plea agreements that include an appeal waiver.") (citations omitted). For instance, waivers of appeal rights "usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements[,]" *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000), which in turn benefits defendants who obtain lower sentences in exchange for these waivers, *see Tovar*, 2013 WL 5564187, at *1 (in exchange for a waiver the "defendant gets a lower sentencing recommendation and the court is more willing to agree to a lower sentence than would be the case absent the waivers"). Counsel's advising Lopez-Sanchez to waive his appeal rights conformed to objectively reasonable norms. Advising him against waiving those rights likely would have procured a less favorable plea deal.

Moreover, Lopez-Sanchez's complaint that he was afforded less rights because he is an "immigrant," Reply at 1, finds no support in the record. The court finds no prejudice based on the alleged "misadvice" Lopez-Sanchez received to forfeit his appeal rights.

### 2. Length of his Sentence

Lopez-Sanchez's allegation that "the amount of time I should serve was another example of the ineffectiveness of this lawyer," Sanchez Aff. at 1, is likewise unavailing. Lopez-Sanchez contends his attorney erroneously advised him he would not get "more than 3 years," and then never tried to reduce the length of the 65-month sentence provided for in the plea agreement. *Id.* He also argues his foot injury arising from a police dog bite he sustained during arrest should have been argued as a mitigating factor to reduce his prison term. *Id.* The court is unpersuaded.

If Lopez-Sanchez's attorney had raised the dog bite injury as a mitigating factor at sentencing, the argument would have contravened the plea agreement, which expressly forbade Lopez-Sanchez from "seek[ing] any downward departure, adjustment, variation, or reduction of his agreed-upon sentence of 65 months incarceration as set forth in this plea agreement for any reason." Plea Agmt. ¶ VI.B. This all-encompassing language precludes even arguing for a downward departure or variance based on mitigating injuries.

Moreover, after signing the plea agreement and affirming he understood everything within it, Lopez-Sanchez stated under oath in open court that he was fully satisfied with the advice, counsel, and representation of his attorney. Plea Tr. at 6. This belies his argument that his attorney "did not really defend him in anyway." Pet. ¶ 14.A. Within his plea agreement, Lopez-Sanchez affirmed, "I am satisfied with the representation and effectiveness of my attorney in this case. I do not need or desire any additional time to review this Plea Agreement or to discuss it with my attorney." Plea Agmt. at 12. Later, at sentencing, when given an opportunity to provide an allocution, Lopez-Sanchez declined. Sentencing Tr. at 11. If Lopez-Sanchez had any qualms about the length of his sentence or his attorney's lack of assistance in obtaining a shorter sentence, he had ample opportunity to register his discontent on the record.
/////

As *Strickland* warned, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" 466 U.S. at 689.

Finally, the favorable terms of the plea deal itself controvert Sanchez's claim that his attorney did nothing to negotiate a better deal. At the time of plea deal, Sanchez faced up to fifty years in prison, with mandatory five-years minimum. Indictment at 7-8. In exchange for pleading guilty to Count One and waiving his right to appeal or collaterally attack his sentence, the government dismissed the remaining two counts on the condition that his sentence be 65 months in prison. Plea Agmt. ¶ VII(B). The slight increase from the five-year statutory mandatory minimum for the single count was supported by the aggravating circumstances to which the parties stipulated. *See id.* ¶¶ I.B., II.A., V.A, VI.B. These aggravating circumstances, explained for the record more than once, included using "a six-foot deep human-dug pit next to the [marijuana] site that contained sixteen sharpened stakes" and "four wire snares . . . one of which ensnared a law enforcement canine assisting with the search." Plea Agmt. Ex. A; Plea Tr. at 7; Sentencing Tr. at 10 . Given these aggravating circumstances, Sanchez's plea deal was objectively reasonable. *Cf. Padilla*, 559 U.S. at 372.

### 3. Language Barrier and Communication Deficiencies

Finally, the record also belies Lopez-Sanchez's claim that language barriers and communication hardships meant he received ineffective assistance of counsel. Pet. ¶ 14.A; Sanchez Aff. at 1. To support this claim, Lopez-Sanchez contends "the plea was not in Spanish either, so I was unable to understand its provisions"; his communication with his lawyer in general "was very bad, most of the time . . . and it was barely understandable" and that when he "requested a version [of discovery] in Spanish, [his] lawyer said it was too long, and was too much work." Sanchez Aff. at 1.

During the thorough Rule 11 colloquy before the court accepted his guilty plea, Lopez-Sanchez was assisted by a certified Spanish interpreter; Lopez-Sanchez told the court he understood what was happening in court that day and swore to speak up if he did not understand anything. Plea Tr. at 3. He also swore he would answer the court's questions truthfully. *Id*. He confirmed he had fully reviewed the plea agreement with an interpreter and considered its

contents before signing it. *Id.* at 4-6. He confirmed he understood the factual basis for his plea agreement, that this basis was accurate and had been read to him in Spanish before he signed it. *Id.* at 19-20. He confirmed he understood the sentence the parties agreed on, and that he was entering his guilty plea freely and voluntarily. *Id.* at 6. He twice confirmed, without hesitation, that he was satisfied with his attorney's representation. *Id.* at 6 (Q: "Are you fully satisfied with the advice, counsel and representation that Mr. Jimenez has given you in this case?" A: "Yes."); Plea Agmt. ¶ IX.A (affirming "I am satisfied with the representation and effectiveness of my attorney in this case.").

Had Lopez-Sanchez felt his language barrier and communication challenges prevented him from understanding the plea agreement or the length of his sentence, and that his attorney offered "very little assistance" and "did not really defend [him] in any way," he had the opportunity to let the court know. Lopez-Sanchez's belated contention that he merely "went through the motions" during the colloquy because he could not understand English, *see* Reply at 1, does not meet *Strickland*'s high standards, given that his statements in open court, which were not coerced, carry great weight. *See, e.g.*, *United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) ("Statements made by a criminal defendant contemporaneously with his plea should be accorded great weight because solemn declarations made in open court carry a strong presumption of verity.") (quotation marks and brackets omitted). Moreover, Lopez-Sanchez presents no persuasive argument to suggest that if he had spoken to his attorney in person more often, or received discovery documents and a plea agreement translated into written Spanish, the outcome here would be any different.

Lopez-Sanchez has not shown he received ineffective assistance of counsel. Even if he had, he was not prejudiced. Lopez-Sanchez has not met *Strickland*'s heavy burden.

III. CERTIFICATE OF APPEALABILITY

No certificate of appealability will issue. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has instructed that a petitioner must show "reasonable jurists could debate whether . . . the petition should have been resolved in

9

a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Lopez-Sanchez has made neither showing. 28 U.S.C. § 2253(c)(2). No reasonable jurists would find this court's assessment of his claims debatable or wrong.

IV.  CONCLUSION

The court denies Lopez-Sanchez's § 2255 petition to vacate or reduce his sentence on account of constitutionally ineffective assistance of counsel. The government's motion, ECF No. 120, and Lopez-Sanchez's request for a status update, ECF No. 141, are DENIED as MOOT.

IT IS SO ORDERED.

This resolves ECF Nos. 99, 120 and 141.

DATED: March 12, 2018.

_____
UNITED STATES DISTRICT JUDGE